UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-395 (EGS) |
| | : | |
| v. | : | |
| | : | |
| DAVID J. BROWN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant David J. Brown.

**I. FACTUAL BACKGROUND**

On November 30, 2005, the defendant pled guilty before this Court to a one-count Information charging him with bank fraud, in violation of 18 U.S.C. §1344.

As set forth in greater detail in the filed Statement of Offense, which was agreed to by the defendant at the time of his plea, the defendant Brown owned and operated a small business known as 12-Volt Mobile Electronics ("the 12-Volt Store"), as well as two related businesses, Auto Sound Shop ("Auto Sound") and DDA Group ("DDA"), all of which were located at one address in the District of Columbia. The focus of all three of these related entities was the sale and installation of sound equipment, such as radios and stereos, for both homes and automobiles.

In or about April 2001, the Defendant opened two business checking accounts at Bank of America, N.A., ("BOA"); one in the name of Auto Sound and the other in the name of DDA. Defendant was listed as the sole proprietor and signatory on both business accounts. On or about August 15, 2001, in order to finance his purchase of a property located at 1357 Morris Road,

Washington, D.C. ("the Morris Road property"), the Defendant manufactured and deposited two counterfeit checks totaling $31,577 into his bank accounts at BOA in two separate transactions involving each of the accounts.

After depositing the checks and consolidating the counterfeit monies into the DDA account via an internal BOA wire transfer, the Defendant then used these monies to pay for the Morris Road property. Specifically, on or about August 16, 2001, the Defendant wrote a check drawn on the DDA account at BOA in the amount of $32,463 made payable to his sister, Sheila Brown. The reference line of the check provided that it was a "Cashiers Check for Raflo Title," which was the settlement company handling the purchase of the Morris Road property. Upon receipt of the funds, Raflo Title wired $29,381 to the United States Department of Housing and Urban Development ("HUD"), which was the seller of the Morris Road property, and on or about August 17, 2001, the Defendant's wife, Shawntell Brown, took title to the property. As a result of the Defendant's deposit of counterfeit checks into the Brown Businesses' BOA accounts, BOA suffered an actual loss of $28,148.

Moreover, although Shawntell Brown was the alleged purchaser of the Morris Road property, all future proceeds deriving from transactions relating to the property were made payable to David Brown.

## II.  UNITED STATES SENTENCING GUIDELINES AND THE IMPACT OF BOOKER

The probation officer believes, and the United States concurs, under the applicable advisory United States Sentencing Guidelines, that the defendant's total offense level is eight and his criminal history category II, with an attendant Guidelines range of four to ten months imprisonment. PSR, at page 17, ¶ 87.

There are no facts involved in the calculation of the defendant's sentence under the United States Sentencing Guidelines that were not admitted by him in his guilty plea. Accordingly, no Sixth Amendment concerns arise in the calculation of his Guidelines sentence. Although the Supreme Court held in United States v. Booker, 125 S. Ct. 738 (2005), that the Sentencing Guidelines are no longer mandatory, for the reasons set forth below, the government contends that the appropriate sentence of defendant in this case is one within the range of four to ten months and the government recommends that the defendant be sentenced to the top of that range.

In Booker, the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004) and consequently invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 764. The remaining statutory scheme, set forth in Title 18, United States Code, Section 3553(a), states that a court should consider the following factors in imposing a sentence on a criminal defendant:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence, as reflected in a) the seriousness of the offense and need for just punishment and respect for law; b) promotion of general deterrence; c) protection of the public; and d) providing for educational, medical and other needs of the defendant;

(3) the types of possible sentences;

(4) the range established for the conduct under the Guidelines;

(5) the policies promulgated by the Sentencing Commission;

(6) ways to fashion a sentence that promote uniformity in sentencing for like offenses and offenders; and

(7) victim restitution.

Although it invalidated the mandatory obligation of the Sentencing Guidelines, the Booker Court importantly and expressly upheld the remainder of the Guidelines as an appropriate benchmark for courts to look to in determining a reasonable sentence for the defendant before it. Booker, 125 S. Ct at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, the statutory obligation remains for a court wishing to impose a sentence outside the applicable range to state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that prescribed by the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by a Court of Appeals for "reasonableness." Booker, 125 S. Ct. at 764-66.

Accordingly, a sentence within the Guidelines will, in most, if not all, cases be inherently reasonable and will have adequately taken into account each of the factors enumerated in Section 3553(a). Indeed, the Sentencing Commission formulated the Guidelines only after canvassing prior sentencing practices and identifying and assigning weights to all of the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring the Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal

cases"). In light of the Booker Court's continued reliance on the Guidelines, and its history in the calculation of the applicable ranges, the government contends that, absent unusual circumstances under one of the other Section 3553 factors, a defendant's sentence should fall within the Guidelines range as determined by this Court.

### III. ADDITIONAL SENTENCING FACTORS UNDER SECTION 3553(a)

A consideration of the additional sentencing factors under Section 3553(a) supports the conclusion that a sentence at the top of the Guidelines range is appropriate in this case. As provided in greater detail in the Presentence Investigation Report, the defendant's relevant conduct in this case is just yet another example of the defendant's repeated contact with the criminal justice system. See PSR, at page 7-11, ¶¶ 24-43. As recently as last year, the defendant had an outstanding case in the state of Pennsylvania for the issuance of bad checks, for which he failed to appear for his scheduled court date. Id. at 9, ¶ 28. Even at this time, the warrant remains active. Id. The defendant's previous federal conviction for credit card fraud is alarmingly similar in the defendant's use of the benefits of his legitimate business (credit card terminals, bank accounts and the like) to steal money through financial fraud. Id.. at 8, ¶ 26. To this day, the defendant still owes over $15,000 in restitution for the losses sustained by the victims in that case. Id. at 16, ¶ 80.

Furthermore, the defendant's lack of candor with the presentence report writer should give this Court pause. The defendant, in this instance, reported that there was no history of mental health treatment. Id. at 14, ¶58. Yet the defendant's previous Presentence Report from his earlier conviction lays bare a detailed history of prior mental health treatment. More significantly, the presentence report writer asked defendant Brown to provide his financial information on two occasions in order to assess his ability to pay a fine and determine the monthly contribution for

5

restitution.  Id. at 17, 85.  He failed to do so.  Only in late April, on the eve of sentencing, did the defendant's attorney contact the United States in an attempt to explain why the defendant failed to provide the necessary financial information.  The defendant now claims, because the government seized a computer in an executed search of the 12-Volt store approximately five years ago, he no longer has access to the records needed to provide his current financial wherewithal to pay.  That claim is preposterous.  At no point in the previous years has the defendant ever claimed that the seized material contained information he needed in order to assess his finances.  As detailed in the Presentence Report itself, the defendant in the intervening years has purchased and refinanced numerous properties – all of which must necessarily have required the disclosure of financial information akin to what was requested by the presentence report writer.  Id. at 17, ¶ 83.  The defendant has deliberately failed to disclose his finances in this case.  The Court should not brook such conduct.

In light of the defendant's personal circumstances, the nature and seriousness of the offense, ten months imprisonment, at the top of the applicable guidelines range, is a reasonable and appropriate sentence in this case – one that takes into account all of the factors enumerated in Section 3553(a).  As this Court is aware, that range, which reflects compiled data on sentencing over time and geography, properly incorporates the need to promote uniformity in sentencing for comparable

offenses and comparably situated offenders. For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of incarceration at the top of the guidelines range as set forth above, in the Presentence Report, and in the plea agreement.

                                Respectfully submitted,

                                KENNETH C. WAINSTEIN
                                UNITED STATES ATTORNEY

By: _____
      JEANNIE S. RHEE
      ASSISTANT U.S. ATTORNEY
      Bar No. 464-127
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 514-9832